UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 23-cv-6679 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| MAGELLAN MIDSTREAM PARTNERS, | : **SECURITIES EXCHANGE ACT OF** |
| L.P., WALTER R. ARNHEIM, LORI A. | : **1934** |
| GOBILLOT, EDWARD J. GUAY, | : |
| CHANSOO JOUNG, STACY P. METHVIN, | : **JURY TRIAL DEMANDED** |
| AARON L. MILFORD, JAMES R. | : |
| MONTAGUE, BARRY R. PEARL and | : |
| SIVASANKARAN SOMASUNDARAM, | : |
| | : |
| Defendants. | |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against Magellan Partners, L.P. ("Magellan or the "Company") the members Magellan's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Magellan and ONEOK, Inc. and affiliates ("ONEOK").

2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on June 20, 2023 with the United States Securities and

Exchange Commission ("SEC"), as amended on July 10, 2023, and disseminated to Company unitholders. The Registration Statement recommends that Company unitholders vote in favor of a proposed transaction whereby Otter Merger Sub, LLC, a wholly owned subsidiary of ONEOK ("Merger Sub"), will merge with and into Magellan, with Magellan surviving the merger as a direct wholly owned subsidiary of ONEOK (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on May 14, 2023 (the "Merger Agreement"), each Magellan unitholder will receive the right to receive 0.667 of a share of ONEOK common stock (the "Merger Consideration").

3. As discussed below, Defendants have asked Magellan's unitholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's unitholders prior to the forthcoming vote on September 21, 2023 so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Magellan's unitholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because plaintiff resides in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of Magellan stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Walter R. Arnheim has served as a member of the Board since 2009.

11. Individual Defendant Lori A. Gobillot has served as a member of the Board since 2016.

12. Individual Defendant Edward J. Guay has served as a member of the Board since 2016.

13. Individual Defendant Chansoo Joung has served as a member of the Board since 2019.

14. Individual Defendant Stacy P. Methvin has served as a member of the Board since 2015.

15. Individual Defendant Aaron L. Milford has served as a member of the Board since 2022 and is the Company's President and Chief Executive Officer.

16. Individual Defendant James R. Montague has served as a member of the Board since 2003.

17. Individual Defendant Barry R. Pearl has served as a member of the Board since 2009.

18. Individual Defendant Sivasankaran Somasundaram has served as a member of the Board since 2022.

19. Defendant Magellan is a Delaware limited partnership and maintains its principal offices at One Williams Center, Tulsa, Oklahoma 74172. The Company's stock trades on the New York Stock Exchange under the symbol "MMP."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction**

22. Magellan engages in the transportation, storage, and distribution of refined petroleum products and crude oil in the United States. The Company operates refined products pipeline that transports gasoline, diesel and aviation fuel, kerosene, and heating oil to refiners, wholesalers, retailers, traders, railroads, airlines, and regional farm cooperatives; and to end markets, including retail gasoline stations, truck stops, farm cooperatives, railroad fueling depots, military bases, and commercial airports. It also provides pipeline capacity and tank storage services, as well as terminalling, ethanol and biodiesel unloading and loading, additive injection,

custom blending, laboratory testing, and data services to shippers. In addition, the Company owns and operates crude oil pipelines and storage facilities; and marine terminals located along coastal waterways that provide design, installation, construction, testing, operation, replacement, and management of assets to refiners, marketers, and traders. Magellan was incorporated in 2000 and is headquartered in Tulsa, Oklahoma.

23. On May 14, 2023, the Company and ONEOK jointly announced the Proposed Transaction:

> TULSA, Okla., May 14, 2023 /PRNewswire/ -- ONEOK, Inc. (NYSE: OKE) ("ONEOK") and Magellan Midstream Partners, L.P. (NYSE: MMP) ("Magellan") today announced that they have executed a definitive merger agreement under which ONEOK will acquire all outstanding units of Magellan in a cash-and-stock transaction valued at approximately $18.8 billion including assumed debt, resulting in a combined company with a total enterprise value of $60.0 billion. The consideration will consist of $25.00 in cash and 0.6670 shares of ONEOK common stock for each outstanding Magellan common unit, representing a current implied value to each Magellan unitholder of $67.50 per unit, for a 22% premium, based on May 12, 2023 closing prices.
>
> **STRATEGIC RATIONALE:**
> - **Brings together two premier energy infrastructure businesses with strong returns on invested capital and diverse free cash flow generation:** The transaction adds a leading, and primarily fee-based, refined products and crude oil transportation business to ONEOK. Magellan's stable, primarily demand-driven businesses are expected to generate significant free cash flow due to low capital expenditure requirements. This acquisition creates a more resilient energy infrastructure company that is expected to produce stable cash flows through diverse commodity cycles.
> - **Expect to achieve immediate financial benefits, including cost, operational and tax synergies, supporting meaningful expected accretion:** The transaction is expected to be earnings per share (EPS) accretive beginning in 2024 with EPS accretion of 3% to 7%

per year from 2025 through 2027, and free cash flow per share accretion averaging more than 20% from 2024 through 2027. Base forecasted synergies are expected to total at least $200 million annually.

From a tax perspective, ONEOK expects to benefit from the step-up in Magellan's tax basis from the transaction, thus deferring the expected impact of the new corporate alternative minimum tax from 2024 to 2027. The benefit from the basis step-up has an estimated total value of approximately $3.0 billion, which has an estimated net present value of approximately $1.5 billion. Utilization of expected tax attributes could increase if additional capital projects are put into service or acquisitions are completed, which may increase the net present value of future tax deferrals.

- **Compelling long-term value proposition driven by consistent and disciplined capital allocation philosophy:** The combined company is expected to experience a step change in free cash flow after dividends and growth capital by generating an average annual amount of approximately $1.0 billion in the first four years following the expected transaction close. The increase in free cash flow will provide additional cash for debt reduction, growth capital and value returned to shareholders through dividends and/or repurchasing shares. ONEOK remains committed to growing both EPS and its common dividend while targeting a payout ratio of less than 85%.
- **Complementary and diversified asset positions with potential for additional cost and commercial synergies over time:** The combined company will own more than 25,000 miles of liquids-oriented pipelines, with significant assets and operational expertise at the Gulf Coast and Mid-Continent market hubs. ONEOK anticipates this combined liquids-focused portfolio will present significant potential for enhanced customer product offerings and increased international export opportunities. We believe these activities could potentially result in total annual transaction synergies exceeding $400 million within two to four years.
- **Strong investment-grade credit ratings with enhanced scale and diversification:** The combined company expects pro-forma 2024 year-end net debt-to-EBITDA of approximately 4.0 times.

ONEOK expects leverage to decrease below 3.5 times by 2026 as future growth projects are placed in service. Excluding certain large projects that have not yet received a final investment decision from the expected net debt-to-EBITDA calculation would accelerate the timeframe to achieve 3.5 times by approximately one year.

**CEO PERSPECTIVE:**

"ONEOK has a long history and track record of being at the forefront of transformational transactions. The combination of ONEOK and Magellan will create a diversified North American midstream infrastructure company with predominately fee-based earnings, a strong balance sheet and significant financial flexibility focused on delivering essential energy products and services to our customers and continued strong returns to investors," said Pierce H. Norton II, ONEOK president and chief executive officer. "Our expanded products platform will present further opportunities in our core businesses as well as enhance our ability to participate in the ongoing energy transformation with an increased presence in sustainable fuel and hydrogen corridors. We are excited about the future of our combined companies and look forward to welcoming Magellan's well-respected employees to ONEOK," added Norton.

"Throughout more than 20 years as a publicly traded company, Magellan has remained focused on safe and responsible operations, financial discipline and long-term investor value. We believe ONEOK shares these priorities, and we are pleased to join them in creating a stronger, more diversified midstream company," said Aaron Milford, Magellan president and chief executive officer. "We believe the premium offered maximizes value creation for Magellan's unitholders and reflects the essential nature of Magellan's assets and service offerings as well as the quality of our talented and innovative employees. This transaction provides a significant upfront cash component and an opportunity for Magellan investors to benefit from the attractive cash dividend offered by the combined company going forward."

**TRANSACTION DETAILS:**

Magellan will be merged into a newly created 100% wholly-owned subsidiary of ONEOK.

Each Magellan unitholder will receive $25.00 in cash and 0.6670 shares of ONEOK stock per unit. This represents a 22% premium to the Magellan closing price on May 12, 2023.

The transaction is expected to close in the third quarter of 2023 and has been unanimously approved by the board of directors of both companies. ONEOK has secured $5.25 billion in fully committed bridge financing for the proposed cash consideration. The closing of the transaction is subject to customary closing conditions, including the approvals of both ONEOK shareholders and Magellan unitholders, as well as Hart Scott Rodino Act clearance.

Following the close of the transaction, Pierce Norton will continue to serve as chief executive officer of the combined company. ONEOK intends to seek and nominate one or two director(s) serving on the board of Magellan's general partner.

**TAX IMPLICATIONS:**

The transaction will be a taxable event for Magellan unitholders and will cause ONEOK to have a step-up in tax basis approximately equal to the aggregate purchase price of Magellan units and Magellan debt assumed (approximately $18.8 billion). The premium and cash portion of the consideration may assist with potential tax implications for Magellan unitholders occurring from this transaction. This transaction is expected to defer significant corporate cash tax liability into future periods for the combined entity.

*\*  \*  \**

**ADVISORS:**

Goldman Sachs & Co. LLC is serving as lead financial advisor to ONEOK and Goldman Sachs Bank USA is providing fully committed bridge financing. BofA Securities and TPH&Co., the energy business of Perella Weinberg Partners, also advised

ONEOK. Kirkland & Ellis LLP is serving as ONEOK's legal advisor.

Morgan Stanley & Co. LLC is serving as financial advisor to Magellan. Latham & Watkins LLP and Richards, Layton & Finger, P.A. are acting as Magellan's legal advisors.

\* \* \*

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Magellan's unitholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming vote.

**B.**     **The Materially Incomplete and Misleading Registration Statement**

25. On July 10, 2023, Magellan and ONEOK jointly filed the amended Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's unitholders and solicits the unitholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's unitholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's unitholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Morgan Stanley in its analyses. The Registration Statement discloses management-prepared or management-approved financial

9

projections for the Company and ONEOK which are materially misleading. The Registration Statement indicates that in connection with the rendering of their fairness opinion, that the management of ONEOK and Magellan prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and Morgan Stanley with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and Morgan Stanley. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.    For the Magellan Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2027: Adjusted EBITDA, Free Cash Flow, Adjusted Free Cash Flow After Distributions, Unlevered Free Cash Flow derived by Magellan, and Unlevered Free Cash Flow derived by ONEOK, but fails to provide line items used to calculate these metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

28.    For the Magellan Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2027: Adjusted EBITDA, Free Cash Flow, Adjusted Free Cash Flow After Dividends, Unlevered Free Cash Flow derived by Magellan, and Unlevered Free Cash Flow derived by ONEOK, but fails to provide line items used to calculate these metrics and/or a reconciliation of the non-GAAP

metrics to their most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

29. For the *Pro Forma Forecasted Financial Information*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2027: Adjusted EBITDA, Free Cash Flow, Adjusted Free Cash Flow After Dividends, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that unitholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

32. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

33. With respect to Morgan Stanley's *Comparable Public Companies Analysis* for Magellan and for ONEOK, the Registration Statement fails to disclose: (i) the financial metrics for each company selected by Morgan Stanley for the analysis; (ii) the inputs and assumption underlying the selected ranges of 2023E AV/EVITDA Ratio and 2023E P/DCF Ratio of 9.5x – 11.5x and 8.0x – 10.0x, respectively.

34. With respect to Morgan Stanley's *Precedent Transactions Analysis* for Magellan, the Registration Statement fails to disclose: (i) the financial metrics for each transaction selected by Morgan Stanley for the analysis; (ii) the inputs and assumption underlying the selected range of AV/NTM EBITDA Ratio of 9.0x – 11.0x.

35. With respect to Morgan Stanley's *Discounted Equity Value Analysis* for Magellan and ONEOK, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the range of multiples of AV/EBITDA for the 12-month period following January 1, 2025 of 9.5x to 11.5x; (ii) the companies' historical long-term trading multiples; and (iii) the inputs and assumptions underlying the discount rate of 7.8% for Magellan and 9.0% for ONEOK.

36. With respect to Morgan Stanley's *Discounted Cash Flow Analysis* for Magellan and ONEOK, the Registration Statement fails to disclose: (i) the terminal value of the companies; (ii) the inputs and assumptions underlying the NTM EBITDA exit multiple range of 9.5x to 11.5x;

12

and (iii) the inputs and assumptions underlying the discount rates 6.8% for Magellan and 7.3% for ONEOK.

37. With respect to Morgan Stanley's *Equity Research Analysts' Price Targets* for Magellan, the Registration Statement fails to disclose the 14 equity research analysts reviewed and their price targets for Magellan.

38. With respect to Morgan Stanley's *Equity Research Analysts' Price Targets* for ONEOK, the Registration Statement fails to disclose the 20 equity research analysts reviewed and their price targets for Magellan.

39. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special unitholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with unitholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with

respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42. Defendants have issued the Registration Statement with the intention of soliciting unitholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's unitholders vote in favor of the Proposed Transaction.

43. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to unitholders although they could have done so without extraordinary effort.

44. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

45. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Magellan within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Magellan, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Magellan, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Magellan, and, therefore, is presumed to have had the

15

power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

50. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 31, 2023

**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*